# CHAIRMAN OF THE BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF MARYLAND ET AL. *v.* RICHARD V. WALDRON

[No. 40, September Term, 1978.]

*Decided May 10, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ., and reargued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Carol S. Sugar* and *Robert A. Zarnoch, Assistant Attorneys General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellants.

*Richard V. Waldron,* with whom were *David A. McNamee, Thomas H. Price, III* and *Beatty & McNamee* on the brief, for

appellee. Reargued by *Thomas H. Price, III* and *Richard V. Waldron* for appellee.

DIGGES, J., delivered the opinion of the Court.

In August 1977, upon his retirement as an active member of the Maryland judiciary following ten years of service as a judge on the District Court of Maryland and on one of its predecessors, the People's Court of Prince George's County, *see* Md. Const., Art. IV, § 41-I (a), respondent Richard V. Waldron notified the Employees' Retirement System of the State of Maryland that he wished to receive the pension benefits to which he was statutorily entitled. *See* Md. Code (1957, 1978 Repl. Vol.), Art. 73B, § 57 (h). At the same time, being a member of the Maryland and District of Columbia Bars and desiring to resume the practice of law but wanting to insure that such action would in no way jeopardize the continued receipt of his pension, Judge Waldron instituted this declaratory judgment action in the Circuit Court for Calvert County against the Employees' Retirement System and several of its officials.[1] By this suit respondent sought a declaration that section 56 (c) of Article 73B of the Maryland Code was unconstitutional or, in the alternative, that he was entitled to other specified relief.[2] Section 56 (c) provides:

*A judge who retires and accepts the pension provided by this subtitle may not, thereafter, engage*

---

1. In this action respondent joined as defendants Louis L. Goldstein, Comptroller of the Treasury and Chairman of the Board of Trustees of the Employees' Retirement System; Christ G. Christis, Assistant Secretary of Personnel for Retirement Systems; and the Employees' Retirement System of the State of Maryland.

2. We quote in full the declaration requested:

1. That Article 73B, Section 56 (c), be declared unconstitutional as violative of the equal protection and due process clauses of the 14th Amendment to the U. S. Constitution, and the Maryland Declaration of Rights, Article 23.

2. That in the alternative, a declaratory judgment that Article 73B, Section 56 (c), be construed, so as to allow petitioner, at any time, to defer the receipt of his pension, to practice law for compensation, and at the termination of such practice to receive his pension.

3. That in the alternative, a declaratory judgment limiting the application of Article 73B, Section 56 (c), to the practice of law for compensation, within the State of Maryland, thus, allowing petitioner to receive his pension if he chooses to practice law for compensation in another State.

*in the practice of law for compensation;* but this prohibition does not apply to a former judge who has attained the age of 70 years and received less than $3,500 per annum in pension as provided by this subtitle, and who has not voluntarily retired. [Md. Code (1957, 1978 Repl. Vol.), Art. 73B, § 56(c) (emphasis supplied).[3]]

After a hearing on the matter, the trial court (Bowen, J.) declared section 56 (c) to be unconstitutional as violative of the equal protection clause of the fourteenth amendment to the United States Constitution, thus permitting respondent both to receive his pension and practice law in this State. The petitioners now come before this Court pursuant to certiorari and assert, as they did in the circuit court, not only that

---

3. As an aid to the reader in understanding the context in which subsection (c) appears, we also set out the following additional provisions of section 56:

(a) A judge, after termination of his service, shall be paid the pension provided in the contributory plan or the noncontributory plan, until his death.

(b) If a judge has reached the age of 60 years at the time of termination of his service, or if he resigned because of disability, or if he was retired by order of the Court of Appeals, or if he has died, the pension shall begin immediately; otherwise it shall be deferred until the former judge reaches the age of 60 years. Resignation because of disability becomes effective upon favorable recommendation of the medical board.

\* \* \*

(d) (1) ... [A] retired judge eligible for benefits under this subtitle may accept employment in which all or part of the compensation for the employment comes from municipal, county, State, or federal funds, if he immediately notifies the board of trustees of the Employees' Retirement System of his intention to accept the employment and specifies the compensation to be received for the employment. The annual retirement allowance receivable by the former judge plus the annual compensation for the position may not exceed in amount the compensation upon which the retirement allowance is based. During any period in which the total of the annual retirement allowance and the annual compensation for the position in fact exceeds the compensation upon which the retirement allowance is based, the retirement allowance shall be reduced by that amount necessary to bring the former judge's total compensation within the limit specified in this subsection. If a retired judge accepts employment in accordance with this subsection and is subsequently awarded retirement benefits as a result of that employment, his retirement benefits under this subtitle shall be reduced in the amount of the retirement benefits resulting from the subsequent employment. [Md. Code (1957, 1978 Repl. Vol.), Art. 73B, § 56 (a)-(b), (d)(1).]

section 56 (c) does not violate any stricture of the federal or Maryland constitutions but also that the trial court here should have dismissed the action as venue was in Baltimore City rather than in Calvert County.[4]

We find ourselves in agreement with petitioners that this case should be dismissed, although for reasons and with consequences different from those they espouse; however, prior to any discussion of our rationale for reaching such a conclusion, we think it important to note, although none of the parties raise the issue, that while each member of this Court and, indeed, every judge in this State, potentially has at least a remote interest in the outcome of this litigation, which normally might merit recusal, *see* Md. Const., Art. IV, § 7; ABA Code of Judicial Conduct, Canon 3C(1)(c) (1972), our collateral interests nonetheless do not disqualify any of us from participating in this Court's decision on the merits of this dispute. Nearly four decades ago, faced with an almost identical situation in dealing with the constitutionality of the imposition of a state income tax upon the salary of judges, this Court, while recognizing the delicacy of deciding a case in which the members of the Court had an indirect interest, declared:

> Under these circumstances the disqualification of all the judges would destroy the only tribunal in which relief by appeal may be sought. To bar the opportunity for redress by appeal is more prejudicial to sound public policy than the alternative, to permit an appeal to be heard by judges whose disqualification is in their collateral interest in the legal effect of the judgment to be rendered. So, of necessity, the rule as to the disqualification of judges must yield if the right of appeal is to be preserved. "The settled rule of law is that, although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal

---

4. Respondent claims that under Md. Code (1974), § 6-201 (b) of the Courts Article venue is properly in Calvert County because petitioner Louis L. Goldstein is a resident of that county.

interest, yet he not only may but he must do so if the case cannot be heard otherwise." [*Gordy v. Dennis,* 176 Md. 106, 109, 5 A. 2d 69, 70 (1939) (quoting F. Pollock, *First Book of Jurisprudence* 235 (1896)).]

This rationale applies with equal force to the present action, both before the trial court and on appeal, and thus requires that we proceed to a determination of the issues it displays.

Dismissal of this action is required, we have concluded, because respondent, in seeking as his primary relief a declaration that section 56 (c) is unconstitutional, failed to join any party necessary to litigate this issue, in that none of the petitioners can claim "any interest which would be affected by the declaration." Md. Code (1974), § 3-405 (a) (1) of the Courts Article.[5] In demonstrating why the petitioners here are not the parties required to adjudicate this question, thereby creating a void as to necessary parties, we begin by examining section 56. Subsection (a) of this provision directs that a retired judge's pension "shall be paid . . . until his death." *Id.* (1957, 1978 Repl. Vol.), Art. 73B, § 56 (a). This is a fully vested grant that subsection (c) in no way purports to restrict, limit, or otherwise control. As we read section 56 (c), it is a direct command to a retired judge who accepts a pension that he "may not, thereafter, engage in the practice of law for compensation." *Id.* § 56(c). Obviously, this mandate only precludes a retired judge who has accepted pension payments from receiving recompense for any law practice he undertakes and does not seek to precondition his obtention of his pension upon compliance with any stricture concerning his receiving remuneration for providing legal services, as, we note, subsection (c)'s predecessor did. *Compare id. with id.* (1957, 1970 Repl. Vol., 1973 Cum. Supp., 1973 Add. Supp.),

---

5. In addition to the normal requirements governing joinder of parties, in the case of declaratory judgment actions the General Assembly has specifically provided:

(a) *Person who has or claims interest as party.* — (1) If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party. [Md. Code (1974), § 3-405 (a) (1) of the Courts Article.]

Art. 73B, § 55 (e) (repealed by 1974 Md. Laws, ch. 483, § 1).[6] Thus, unless constitutionally infirm or otherwise unenforceable, section 56 (c) plainly prohibits a retired judge who accepts his pension from engaging in the practice of law for compensation but does not, by its terms, give the Employees' Retirement System and its officers the power to enforce that prohibition by invoking any sanction, including termination of pension payments.

It nonetheless is suggested that consistent with the Employees' Retirement System's general responsibility for the administration of the judicial pension plan and the management of its funds, *id.* (1957, 1978 Repl. Vol.), Art. 73B, § 57 (m), the language of section 56 (c) should be interpreted as authorizing the Retirement System to police that enactment's provisions and discontinue pension payments when subsection (c)'s edict against receiving compensation is not heeded. We simply cannot countenance such a construction without engaging in what would be a most egregious example of judicial legislation. To do so, we think, would be to breach those fundamental canons of statutory interpretation that require if there is no ambiguity or obscurity in the words of the statute and its language expresses a definite and sensible meaning, this Court will not look elsewhere to ascertain the intent of the legislature nor go beyond the ordinary and natural import of the language utilized and resort to subtle and forced interpretations, under the guise of construction, to remedy possible omissions or other defects in an enactment. *See,e.g., Wheeler v. State,* 281 Md. 593, 596, 380 A. 2d 1052, 1054 (1977) (citing authorities), *cert. denied,* 435 U. S. 997 (1978); *Coleman v. State,* 281 Md. 538, 546, 380 A. 2d 49, 54 (1977) (same); *Police Comm'r v. Dowling,* 281 Md. 412, 418, 419, 379 A. 2d 1007, 1010-11 (1977)

---

6. Prior to its repeal in 1974, section 55 (e) of Article 73B provided in pertinent part:

A judge who has been receiving the [pension] benefits provided by this section and who decides to engage in the practice of law may notify the Governor and Comptroller of such fact, and on the indicated date of his engaging in the practice of law his benefits under this section shall cease and no longer be paid; and such a judge shall never again be paid such benefits. [Md. Code (1957, 1970 Repl. Vol., 1973 Cum. Supp., 1973 Add. Supp.), Art. 73B, § 55 (e) (repealed by 1974 Md. Laws, ch. 483, § 1).]

(same); *Harden v. Mass Transit Adm.,* 277 Md. 399, 406, 354 A. 2d 817, 821 (1976) (same); *St. Paul Fire & Mar. v. Ins. Comm'r,* 275 Md. 130, 141-42, 339 A. 2d 291, 297 (1975) (same). There, of course, remains the possibility that some other legislative provision, either in Article 73B, which pertains to state employees' pensions, or elsewhere, might give petitioners the power to impose or initiate the imposition of sanctions for a violation of subsection (c). After a thorough search, however, we have found none that do so. Thus, petitioners, with no power to administer or enforce subsection (c)'s restriction, had no interest that would be affected by a declaration concerning its constitutionality and, therefore, were not parties whose joinder was necessary in order to properly litigate this action.

Our determination that petitioners are not among those parties that must be joined in order to authorize the issuance of a declaration as to the constitutionality of section 56 (c) does not create a vacuum as to the enforcement of this provision's prohibition. Assuming subsection (c)'s validity, a violation of that statute's terms would constitute the "unauthorized practice of law," enforceable in accord with Section 26A of Article 10 of the Code.[7] That section declares:

(a) *By Attorney General.* — Upon his own information or upon complaint of any person, including the bar counsel, any judge, or any organized bar association in this State, the Attorney General may maintain an action for injunctive relief in the circuit court of any county or in the equity courts of the Supreme Bench of Baltimore City against any person who renders, offers to render, or holds himself out as rendering any service which constitutes the unauthorized practice of the law. Any organized bar association in this State or the bar counsel may intervene in the action, at any stage of the proceeding, for good cause shown.

7. Two other provisions of Article 10, section 32 (a) and section 33, provide, respectively, for criminal prosecution for those who practice law for compensation in this State without being admitted to the Maryland Bar, Md. Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.), Art. 10, § 32 (a), and for those who, not being admitted or having been disbarred, represent themselves as entitled to practice law here, *id.* (1957, 1976 Repl. Vol.), § 33. Neither of these strictures would apply to any instance in which section 56 (c) is involved.

(b) *By bar association or bar counsel.* — The action may also be initiated and maintained by any organized bar association in this State, or by the bar counsel. [Md. Code (1957, 1976 Repl. Vol.), Art. 10, § 26A.]

In light of this section, the joinder of at least one of the parties given the power under its provisions to initiate an action against one engaging in the unauthorized practice of law would be necessary to present the question of section 56 (c)'s constitutionality.[8] *See* Md. Code (1974), § 3-405 (a) (1) of the Courts Article. Because none of these necessary parties were joined by the respondent as a defendant in this declaratory judgment action, our decision here must leave for future determination the question of whether, under the equal protection and due process clauses of the federal and Maryland constitutions, U.S. Const. amend. XIV; Md. Decl. of Rts., Art. 24 (formerly Md. Decl. of Rts., Art. 23), as respondent contends, or under the separation of powers provision of the Maryland constitution, Md. Decl. of Rts., Art. 8, the General Assembly has the authority to prohibit a member of the Maryland Bar, who otherwise is in good standing, from engaging in the practice of his profession in this State.

There is, however, one important question raised and argued in the course of this litigation that, for the same reasons just expressed, is subject to dismissal for lack of necessary parties, but about which we will nonetheless ventilate our views because its answer is so obviously dictated by the concepts we already have articulated here. Respondent has contended, and the circuit court agreed, that section 56 (c) does not prohibit a retired judge from practicing law in a jurisdiction other than Maryland. We likewise concur, our conclusion being supported by either of two legal precepts. The first of these is the constructional rule that, unless an

---

8. We note that if the Attorney General is not named as a party in any further declaratory judgment action challenging the constitutionality of section 56 (c), he nonetheless must be notified of such a proceeding. Md. Code (1974), § 3-405 (c) of the Courts Article; *see* Harden v. Mass Transit Adm., 277 Md. 399, 404 n. 3, 354 A. 2d 817, 819 n. 3 (1976).

intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect. *Sandberg v. McDonald,* 248 U. S. 185, 195, 39 S. Ct. 84, 63 L. Ed. 200 (1918). Nothing in section 56(c) or its companion provisions indicates any intention on the part of the General Assembly to make that enactment apply to a retired Maryland judge's legal practice beyond the boundaries of this State. Further, even if such an intent had been manifested by the legislature, the General Assembly of Maryland has no power to regulate whom our sister jurisdictions may authorize to engage in the practice of law within their borders. *See State v. Kriss,* 191 Md. 568, 573, 62 A. 2d 568, 569 (1948) (ordinarily statute not applicable extraterritorially but only to acts done within jurisdiction); *London etc. Co. v. Steamship Co.,* 161 Md. 145, 150, 155 A. 334, 336 (1931) (state statute, having no extraterritorial force, is administered in foreign state only under principles of comity); *Kentucky Bar Ass'n v. Signer,* 533 S.W.2d 534, 536 (Ky. 1976) (per curiam) (judicial disbarment of attorney in one jurisdiction does not affect right to practice in any other); *In re Weiner,* 530 S.W.2d 222, 224 (Mo. 1975) (same). Consequently, we see no reason why a retired judge who chooses to receive his pension and desires to practice law for compensation outside of the State need fear reprisal from any Maryland agency. This question aside, the propriety of imposing any sanction pursuant to section 26A of Article 10 upon a retired judge practicing law in Maryland in violation of section 56 (c) of Article 73B remains an open issue until such time as necessary parties join in a proper action to settle it.[9]

> *Judgment of the Circuit Court for Calvert County vacated and case remanded with direction that it dismiss the proceedings.*
> *Costs to be paid equally by the parties.*

---

9. Respondent also sought a declaration that he is entitled "at any time, to defer the receipt of his pension, to practice law for compensation, and at the termination of such practice to receive his pension." Although this

---

requested declaration arguably would affect petitioners so as to make them necessary parties to its adjudication, because respondent sought such a declaration only in the event section 56 (c) was found to pass constitutional muster, an issue not determined here, we will exercise our discretion, as we can do in actions seeking declaratory relief, *see, e.g.,* Hamilton v. McAuliffe, 277 Md. 336, 340, 353 A. 2d 634, 637 (1976); Liss v. Goodman, 224 Md. 173, 177, 167 A. 2d 123, 125 (1960); Staley v. Safe Deposit & Trust Co., 189 Md. 447, 456-57, 56 A. 2d 144, 149 (1947), and decline to answer that query in this action.

We further note that this disposition, in conjunction with those discussed in the text, requires a dismissal of the entire proceeding, thereby making it unnecessary that we reach the issue of whether venue properly lay in Calvert County.